In re BEARD.

(District Court, S. D. Georgia, N. E. D.    March 28, 1913.)

**1. CHATTEL MORTGAGES (§ 48*)—CROP MORTGAGE—DESCRIPTION.**

A description in a crop mortgage of all the grantor's crop of cotton of 100 acres now up and growing on the lands of B. M. W., also 30 acres of corn on same place up and growing, and 20 acres of cotton on D. J. H.'s place up and growing, was not fatally defective; parol evidence being admissible to identify the same.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 93–95; Dec. Dig. § 48.*]

**2. BANKRUPTCY (§ 184*)—CLAIMS—PRIORITY—CROP MORTGAGE—RECORD.**

Under Civ. Code Ga. 1910, § 3319, providing that the lien of mortgages on crops given to secure debts for supplies to aid in making and gathering the crop shall be superior to judgments of older date than the mortgages, a crop mortgage, though not recorded until after an action was brought on a note against the mortgagor, was prior to the rights of the holder of the note; the mortgagor having become a bankrupt before judgment.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 275–277; Dec. Dig. § 184.*]

In Bankruptcy. In the matter of bankruptcy proceedings of J. E. Beard. On petition to review an order overruling objections of a trustee to priority of a crop mortgage held by J. O. and N. B. Chenault.

C. E. Sutton, of Washington, Ga., for trustee.
F. H. Colley, of Washington, Ga., for bankrupt.
Hardeman, Jones, Park & Johnston, of Macon, Ga., for J. O. and N. B. Chenault.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

SPEER, District Judge. The parties to this case are all gentlemen mainly engaged in agricultural pursuits. In addition to these, the Chenaults conduct a country store at the "forks of the road" not far from Washington, in the county of Wilkes. Since before the American Revolution that historic county has proudly worn its name in honor of that John Wilkes, the famous editor of the North Briton, whose implacable hostility to King George III captivated the affection of Georgians in those early days. The county town, Washington, was given its famous name, not for the Father of his Country, but for Col. Washington, commanding those stark Virginian riflemen, ancestors of the "Stonewall Brigade" who covered Braddock's retreat and saved the remnants of his routed redcoats.

It is not unnatural that a people with such independent antecedents should have independent business methods. The case is illustrative of this. The Chenaults, in their business of "furnishing" the adjacent planters, took many crop mortgages. They, however, recorded none of them. Such record might have been an imputation on the Southern gentlemen with whom dealt these merchants of Huguenot strain. Now, a crop mortgage is a favored security in Georgia. It attaches, not only to the "growing crop," whether it has begun to grow, or actually grows, or ever grows. It secures payment for the guano or other fertilizer, natural or artificial, which stimulates and perfects the snowy fruitage of our royal staple, or the dark green of the Indian corn whose squares of tasselling plumes, swayed o'er broad acres by the soft breath of Southern winds, are glorious like an army with banners. The crop mortgage also supplies rations for Scipio Africanus and his patient mule, who, notwithstanding the obloquy they mutually wear, have no mean place in our economy. Such mortgage, indeed, is regarded in Georgia as superior in dignity to a court judgment, which in less favored states might have the priority of its date. This is made plain by section 3349 of our Code, and has been the law since the act of 1899:

"The lien of mortgages on crops, which mortgages are given to secure the payment of debts for money, supplies, and other articles of necessity, including live stock, to aid in making and gathering such crop, shall be superior to judgments of older date than such mortgages."

Now the Chenaults hold a mortgage of that superior sort. It covered the cotton to be grown on certain specified lands and certain mules. Some of the mules have departed this life, but the value of the cotton is in hand. Another creditor of Beard, the bankrupt, who executed this crop mortgage, is A. S. Anderson. He is the owner of a promissory note given long ago by Beard. In this the payee appears to be "Rasin Fert. Co.," which we construe to mean the "Rasin Fertilizer Company." Of this company, the record is silent. It has probably long been numbered with the things that once were and are not. The note was made at the remote period of May 4, 1894. A. S. Anderson is the transferee of this note, but with that neighborly spirit which pervades in the glorious county of Wilkes (which we may remember en passant was the home of the Mirabeau of the South, Robert Toombs, who is reputed to have said, long ago, that he would

read the roll of his slaves at Bunker Hill monument, but probably never said it), did not trouble his neighbor Beard about principal or interest, or any such base mechanical matter. The years rolled by. In each successive year, when the gentle springtime came and the Southern woods put on their vernal beauties, the orchards gave premonition of their lovely blooms, those good neighbors would repair to Augusta and Washington, and with the accommodating factors "arrange" for "guano," for "mules" and "supplies." Thousands of crop mortgages there were in all these years in Wilkes. All matured and most were paid, for in Wilkes the payment of honest debts was a sine qua non to distinction, indeed to social rank. What harvests of corn and cotton, of melons, of peaches, and all the other varied wealth which nature pours into Georgia's lap, was garnered in these prolific years by Beard, we do not know; but through all Anderson, like Gallio in Holy Writ, cared for none of these things. Not until Beard had done his best and failed were courts and sheriffs troubled with the long dormant claim.

[1] In 1911 the suit of the Rasin Fertilizer Company for the use of A. S. Anderson against J. H. Beard appears for the first time on the dockets of Wilkes superior court. In the meantime bankruptcy intervenes. The "uniform system" made possible by the "sages and patriots" who framed the Constitution takes effect, and so no judgment as yet has been entered on the records of said superior court. The trustee in bankruptcy is appointed. The crop mortgage is filed, and then that official of the bankruptcy court reaches the conclusion that the vital security by which the Georgia farmer is year after year kept "a going concern" must be held subordinate and inferior in rank to the uncomplete proceedings to enforce the chose in action Anderson so long ago bought from the Rasin Fertilizer Company. By the trustee the mortgage is attacked. Insufficient he contends is the description of the values pledged. Now the descriptive language is:

"All my crop of cotton of 100 acres now up and growing on lands of B. M. Walton: also 30 acres of corn on same place up and growing, 20 acres of cotton on Mrs. D. J. Hill's place up and growing."

It is true that this description leaves something to imagination; but it has seemed sufficient to the courts of the state, by whose rulings on such questions we are probably controlled. In Read Phosphate Company v. Weichselbaum Company, 1 Ga. App. 420, 58 S. E. 122, it is held that a mortgage which describes the property as "all my crops, corn, cotton, etc., now up and growing, on about 240 acres of land, all of the above property is in Jackson District, county and state aforesaid," may be explained by parol evidence, so as to point out and identify such property, and is good as between the parties to the mortgage. If it may be explained by parol evidence, surely it may be identified by admission in judicio; and the counsel for the trustee on this hearing admitted that the cotton figuratively before the court was the cotton raised on the lands therein mentioned.

[2] It is, moreover, insisted that this crop mortgage was not recorded until after Anderson's action on the fertilizer note was filed. This, however, does not affect the validity of the crop mortgage as

between Chenault and Beard, nor can it affect the ancient demand of Anderson. No fraud or intended fraud is charged. The credit given by Rasin Fertilizer Company to Beard and evidenced by the promissory note which Anderson holds could not have prevailed, as we have seen, against the crop mortgage, even had it been placed in judgment. A fortiori the crop mortgage must prevail, where the 18 years old chose in action has not been placed in judgment at all.

The referee in bankruptcy has sustained the validity of this crop mortgage which Beard gave to the Chenaults, in order to secure means to make the very cotton, the proceeds of which are now before the court. We think that the law of the state and the principles of equity as well uphold this decision; beside the leisurely methods adopted by Anderson for the enforcement of his 18 years old note, while enhancing the charm of life, where life is happiest in the county of Wilkes, are not favored by the law. Doubtless Anderson's long and langorous repose has made him a happier man. Doubtless it has added to his length of days. But is there not the maxim old, "Vigilantibus et non dormientibus jura subveniunt," which with liberal interpretation imports, "A Georgia crop mortgage is not conducive to safe repose."